PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2485
_____

UNITED STATES OF AMERICA

v.

MICHAEL SIMMONS,
Appellant
_____

On Appeal from United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-05-cr-00074-001)
District Judge:  Honorable William S. Stickman, IV
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 21, 2023

Before:  HARDIMAN, PORTER and FISHER, *Circuit
Judges*.

(Filed: June 1, 2023)

K. Anthony Thomas, Interim Federal Public Defender
Julie A. McGrain
Office of Federal Public Defender
800-840 Cooper Street, Suite 350
Camden, NJ 08102
        Counsel for Appellant

Troy Rivetti, Acting United States Attorney
Donovan J. Cocas
Laura S. Irwin
Office of United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
        Counsel for Appellee

―――――

OPINION OF THE COURT

―――――

FISHER, *Circuit Judge*.

Michael Simmons, convicted of transportation with intent to engage in criminal sexual activity under 18 U.S.C. § 2423(a), was serving a life term of supervised release. After Simmons engaged in a pair of violent incidents and failed to provide accurate information to the state sex offender registry, the District Court found he violated the terms of his release. In accordance with the advisory sentencing guidelines, the Court sentenced him to twenty-one months' imprisonment followed by a reimposed life term of supervised release. For the first time on appeal, Simmons asserts the Court violated 18 U.S.C.

§ 3583(h) by not subtracting the twenty-one months' imprisonment from his life term of supervised release. He also claims the imposition of a life term of supervised release was substantively unreasonable. For the reasons that follow, we will affirm.

I.

A. Factual History

In January 2006, Simmons pleaded guilty to Transportation with Intent to Engage in Criminal Sexual Activity in violation of 18 U.S.C. § 2423(a), for which he was sentenced to 210 months of imprisonment and a lifetime of supervised release. Simmons finished his prison term and began his supervised release in late 2020.

In early 2021, Simmons and his girlfriend went to his mother's home in McKees Rocks for dinner. Later that evening, an argument ensued during which Simmons choked, punched, and threatened to throw hot grease on his mother. Simmons also held both his mother and his girlfriend against their will as he trashed the apartment and threw hot grease in the dining room. Police officers who responded noted his mother had a black and blue eye and a scratch on her neck.

The next day, Simmons' mother was at the home of a friend. Simmons arrived at the house wearing a mask and fired a gunshot through the front door into an occupied room. A home security camera captured video and audio of the incident, including Simmons stating, "next time I'm going to kill everybody." App. 24. The police received a call and filed a report.

In the aftermath of these incidents, Simmons' probation officer spoke to his mother. She told the officer that Simmons did not live with her, despite him having listed her home address as his own with Pennsylvania's sex offender registry.

Rather, Simmons actually lived with his girlfriend in Aliquippa. This violated the terms of his supervised release, which required him to register with the sex offender registry and provide any change of address within 72 hours.

Simmons was charged under state law with terroristic threats, unlawful restraint, simple assault, and strangulation for the incident at his mother's apartment. That same day, the U.S. Probation Office filed a petition and a supplemental petition for warrant or summons alleging four violations of his supervised release: the two violent incidents, failure to update his address with the sex offender registry, and possession of a firearm. Two weeks later, Simmons was arrested and detained. While he was in federal custody, the state charges were withdrawn *nolle prosequi*.[1]

## B. Procedural History

The District Court held a revocation hearing. Simmons denied the allegations that he violated the terms of his supervised release, so the Court heard testimony from him, his probation officer, a police officer who responded to the shooting, and a Deputy U.S. Marshal. The District Court found the Government proved by a preponderance of the evidence all four violations of supervised release alleged in the U.S. Probation Office's Petition. These findings supported an advisory Guidelines range of fifteen to twenty-one months'

---

[1] "A *nolle prosequi* is a voluntary withdrawal by the prosecuting attorney of proceedings on a particular bill or information, which can at any[ ]time be retracted to permit a revival of proceedings on the original bill or information." *Commonwealth v. Whiting*, 500 A.2d 806, 807 (Pa. 1985).

4

imprisonment, and a statutory maximum term of thirty-six months' imprisonment.

The District Court considered the factors required under 18 U.S.C. § 3553(a), including the nature and circumstances of the offense; Simmons' history and characteristics; the need for a sentence that reflects the seriousness of the offense, deters criminal conduct, protects the public, and provides correctional treatment in the most effective manner; the kinds of sentences available; and the applicable Sentencing Commission guidelines and policy statements. The Court then sentenced Simmons to twenty-one months' imprisonment followed by a life term of supervised release. The Court noted Simmons' "violent, offensive conduct," which included assaulting his own mother and firing a gun into an occupied home. App. 101. It also pointed to the serious nature of the underlying crime: Simmons pleaded guilty to having a 16-year-old travel to Los Angeles, serving as her pimp, and forcing her to earn hundreds of dollars each day working as a prostitute before he would give her food or shelter. And the Court recognized Simmons' "ongoing mental health issues" as well as his "history of substance abuse," but noted he had "not fully taken advantage" of treatment services offered by the Probation Office. App. 103. The Court concluded that the sentence would "promote[] respect for the law, and provide[] just punishment for the violations, while acknowledging the serious criminal offenses and noncompliant behavior while on supervised release" as well as "deter[] . . . [Simmons] and other individuals who are tempted to violate their term of supervision." App. 104.

Simmons appeals.

## II.[2]

### A. The District Court Did Not Violate 18 U.S.C. § 3583(h) by Reimposing a Life Term of Supervised Release

Simmons first argues the District Court violated 18 U.S.C. § 3583(h) by reimposing a life term of supervised release and not subtracting the twenty-one months' imprisonment he received upon his revocation of supervised release. Simmons failed to raise this challenge before the District Court, so we review it for plain error. *See United States v. Duka*, 671 F.3d 329, 354 (3d Cir. 2011) (applying Fed. R. Crim. P. 52(b)). Plain-error review requires Simmons to establish four prongs: (1) there was an error; (2) the error was clear or obvious; (3) the error affected his substantial rights; and (4) the error affects the fairness, integrity, or public reputation of judicial proceedings. *See id.* at 354–55.

In any case involving statutory interpretation, we begin with the text of the statute. *United States v. Gonzales*, 520 U.S. 1, 4 (1997). The statute provides:

> When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted

[2] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3583(e). This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

> in the original term of supervised release, *less any term of imprisonment that was imposed upon revocation of supervised release*.

18 U.S.C. § 3583(h) (emphasis added).

The District Court did not plainly err by reimposing a life term of supervised release. Simmons was originally convicted of a sex offense under 18 U.S.C. § 2423(a). A court is authorized to sentence an individual convicted under § 2423(a) to a "life" term of supervised release. 18 U.S.C. § 3583(k) ("[T]he authorized term of supervised release for any offense under section . . . 2423 . . . is any term of years not less than 5, or life."). Thus, Simmons' argument hinges on the meaning of life. Not in the philosophical sense, but the temporal. Simmons argues that life should equate to a fixed term of months or years, and that the District Court erred by not subtracting his twenty-one months' imprisonment from his total time of supervised release.

Congress did not ascribe a definition to life as it is used in § 3583(k). This Court "interpret[s] undefined terms in the [G]uidelines . . . using the terms' meaning in ordinary usage." *United States v. McClure-Potts*, 908 F.3d 30, 36 (3d Cir. 2018) (citation omitted). "To assess ordinary usage [of a term], legal and general dictionaries are a good place to start." *United States v. Dawson*, 32 F.4th 254, 261 (3d Cir. 2022). The ordinary usage of "life" in this context is clear: "the remaining years of [a person's] natural life." *See Imprisonment*, Black's Law Dictionary (11th ed. 2019). Had the Sentencing Commission intended "life" to have any other meaning in the supervised release context, it would have said so. And the distinction in § 3583(k) between a quantifiable "term of years" and an indefinite term of "life" indicates that Congress had no intention of converting "life" to a term of years.

7

The subtraction requirement in § 3583(h)'s final clause cannot be followed where a defendant has a life term of supervision. It is impossible to know how long Simmons might live, and thus it is impossible to subtract twenty-one months from that undefined number of years remaining in his natural life. And even if we could quantify a life sentence, the District Court did not plainly err in declining to do so. This finding comports with what the majority of our sister circuits who have spoken on the issue have also held. *See, e.g.*, *United States v. Crowder*, 738 F.3d 1103, 1105 (9th Cir. 2013); *United States v. Cassesse*, 685 F.3d 186, 191 (2d Cir. 2012); *United States v. Rausch*, 638 F.3d 1296, 1302–03 (10th Cir. 2011), *overruled on other grounds by United States v. Bustamante-Conchas*, 850 F.3d 1130 (10th Cir. 2017). *But see United States v. Shorty*, 159 F.3d 312, 316 (7th Cir. 1998) (stating that "the maximum amount of supervised release possible would have been life minus the amount of imprisonment imposed during the sentencing for revocation," but not deciding whether such a sentence would be possible to impose). Moreover, the District Court rightly noted it would hardly serve the interests of justice if a defendant placed on supervised release for a life term could violate the terms of that release and, in return, receive a shorter period of supervision.

Therefore, the District Court did not violate 18 U.S.C. § 3583(h) by reimposing a life term of supervised release. It is not possible to subtract a known term from an unknown, nor would attempting to do so serve the interests of justice. There was no error, let alone plain error.

8

## B. Simmons' Life Term of Supervised Release was Substantively Reasonable

Simmons next argues the life term of supervised release was substantively unreasonable. We review the substantive reasonableness of a district court's sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). We review sentences imposed upon revocation of supervised release for reasonableness with regard to the § 3553(a) factors. *United States v. Bungar*, 478 F.3d 540, 542 (3d Cir. 2007). "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). "The party challenging the sentence has the burden to demonstrate unreasonableness." *United States v. King*, 454 F.3d 187, 194 (3d Cir. 2006). Sentences within the applicable guideline range are entitled to a presumption of reasonableness. *See United States v. Handerhan*, 739 F.3d 114, 119–120 (3d Cir. 2014). A sentence is substantively reasonable, and we must affirm, if it "falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors." *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008) (citation omitted).

Though Simmons asserts a life term of supervision is greater than necessary to achieve the goals of sentencing, we disagree. The District Court reasonably applied the § 3553(a) factors: it considered the need for a lifetime of supervised release to serve the "interests of justice" and deterrence in light of the seriousness of Simmons' underlying sex trafficking offense and his "violent, offensive conduct" while on supervised release. App. 101. Furthermore, the Court considered evidence regarding Simmons' mental health, but concluded it did not justify a reduction in his post-revocation supervised release. And the Court's decision not to give the

mitigating factors like his mental health "the weight that [Simmons] contends they deserve does not render [his] sentence unreasonable." *See United States v. Lessner*, 498 F.3d 185, 204 (3d Cir. 2007). Simmons cannot show that "no reasonable sentencing court would have imposed" a life term of supervised release "for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). Accordingly, we cannot find the sentence substantively unreasonable.

III.

For these reasons, we will affirm the District Court's imposition of a life term of supervised release.